## STATE v. ARTHUR GRIER.

(Filed 22 November, 1922.)

**Spirituous Liquor—Intoxicating Liquor—Indictment—Manufacturing— Aiding and Abetting—Issues—Verdict—Evidence—Nonsuit—Trials.**

  Where there is circumstantial evidence tending to show that the defendant had free access to the cellar in a house in the country where spirituous liquor was unlawfully manufactured, and was present at the time, and that he carried whiskey in cans from thence to a place of business he had in a nearby city, and had brought several persons out from the city,

etc., it is sufficient for conviction under a count in the indictment charging the unlawful manufacture of intoxicants; and where the jury have rendered a verdict of guilty upon an issue as to aiding and abetting therein, though no such offense was specifically charged, he would be equally guilty with those who had actually done the illicit manufacturing, and a motion as of nonsuit was properly disallowed. C. S., 3409.

APPEAL by defendant from *Webb, J.,* at the July Term, 1922, of MECKLENBURG.

*Attorney-General Manning and Assistant Attorney-General Nash* for the State.
*Stewart & McRae and William H. Bobbitt* for defendant.

WALKER, J. The defendant was convicted at the July Term, 1922, of Mecklenburg Superior Court, of aiding and abetting in the manufacture of spirituous liquors, and from the judgment upon such conviction appealed to this Court.

In the bill of indictment there were several counts, one of which charged the defendant with manufacturing, distilling, and making spirituous and intoxicating liquors. There was no count in the bill which charged him with aiding and abetting in the manufacture of liquor.

The defendant's first exception and exception two were taken to the refusal of the judge to nonsuit at the end of the State's evidence and again at the end of all the evidence.

The State's evidence tended to show that in March, 1922, deputy sheriffs Vesperman and Moser found a large steel still in the basement of Monroe Johnson's house, which house was directly opposite Steel Creek Presbyterian Church, about nine miles from Charlotte. They found there the necessary equipment for operating the still and five hundred gallons of beer. At the time they searched the house, Viry Johnson, wife of Monroe Johnson, was the only person there. The defendant ran a restaurant and kept an automobile for hire, and it was in consequence of information given by Viry Johnson that the officers arrested the defendant Grier, in May, 1922. The defendant was a nephew of Viry. In the early part of the week, before the still was found, he brought cans to her house. On Friday prior to the time the still was found by the officers, he came out to the still in his car and brought two other persons with him. He went into the house where she (Viry) lay sick in bed. At that time he told her that he had nothing to do with the still, but had been hired to bring the other two persons out there. She could hear the voices of bystanders outside the window, and could smell the fumes coming up from the basement, where the still

was. The next night (Saturday night) the defendant came out again, bringing only one person with him. Her husband, Monroe Johnson, was not at home at the time, he being then in the jail at Charlotte. The defendant drove up the roadway leading to the house, and in circling the house to go back out his car stuck in a ditch near the rear of the house. She (Viry) was sick in bed, but got up, went to the window, and saw them put some cans in the car. Tuesday after the still was found by the officers, she (Viry) sent for Harvey Grier, defendant's father, to see him about moving. Harvey was sick at the time, and defendant himself came, finding her lying in bed. She told him that the officers had found the still and beer, and he said, "Oh, Lordy," and fell back on the bed where he was sitting.

It appears from this testimony that Monroe Johnson was not present at either of the times about which his wife testified, when the defendant was present. The defendant himself had free access to the still, and it was being operated while he was there. The witness could smell the fumes coming up from the basement where the still was. Again, when he came back, she saw the defendant put in his car the cans which he had brought out on his former trip. This is sufficient evidence to carry the case to the jury, as to the defendant's guilt upon the charge of manufacturing liquor. The jury, however, convicted him of aiding and abetting in the manufacture of the liquor. The defendant certainly cannot complain that the jury acquitted him of actively engaging in the alleged manufacture of liquor, but convicted him of aiding and abetting others in doing so. *S. v. Smith,* 183 N. C., at p. 729; notwithstanding that in law the fact that he was aiding and abetting the unlawful manufacture of liquor rendered him equally guilty with those who actually operated the still. *S. v. Clark,* 183 N. C., 733. The defendant here was not simply hauling people to this still that they might obtain liquor themselves from it, but there was reason to infer from the circumstances that he evidently, according to Viry Johnson's testimony, brought them there in order that the liquor might be manufactured and carried back to Charlotte. It is a fair inference from this testimony that the place of manufacture of this liquor was at Monroe Johnson's house, but the place of its distribution or sale was at the restaurant of the defendant in Charlotte.

The defendant assigned several errors, based upon the exceptions duly taken by him, as follows:

The first assignment of error is based on the court's refusal to nonsuit at the conclusion of the State's evidence, and at the conclusion of the entire evidence.

The second assignment of error was taken to this instruction to the jury: "Or if they find that the still was not the property of the defend-

ant, but if they are satisfied beyond a reasonable doubt that the defendant was present, aiding and abetting some one else in the unlawful manufacture of the liquor, the defendant would be guilty, and if they so find beyond a reasonable doubt, it would be their duty to convict the defendant." The question (as defendant's counsel contend) raised in this assignment is whether the common-law rule that aiders and abettors in misdemeanors are guilty as principals applies to statutory misdemeanors.

The third assignment of error is to the refusal of defendant's motion in arrest of judgment, and to judgment upon the verdict, namely, "Guilty of aiding and abetting in the manufacture of liquor."

The nonsuit was properly denied, as there was ample evidence of defendant's guilt. If we should concede that it was not shown that he had any connection with the operation of the still, or in any way participated therein, we close our minds to manifest inference which the jury were at liberty to draw from the testimony. It did not require that the witness, Viry Johnson, should have actually seen, or caught, the defendant in the act of operating the still. They had the right to form their conclusion as to his guilt from the facts and circumstances within her knowledge, and which came under her observation, or from what she saw and heard, at the time of the transaction, as related by her while on the witness stand. The acts and conduct of the defendant, generally speaking and without entering into details, were those which usually accompany guilt. They do not have the appearance of lawful or legitimate conduct. The basement, the still, in active operation, and the cans which were brought there and taken away by the defendant, the fumes which arose from below Viry's room, are clearly indicative of unlawful dealings by him, and conjointly with others who came with him and engaged in the illegal manufacture of the liquor, which was carried to Charlotte and placed in his restaurant. The purpose in doing all these things is so apparent that the jury could scarcely have rendered a contrary verdict. The conclusion reached by them was well warranted.

The second and third assignments of error seem to involve substantially the same question; that is, whether the defendant could be convicted of aiding and abetting in the commission of the crime under a bill charging only the principal offense of manufacturing liquor. In order to completely answer this contention it is necessary merely to refer to the statute, which is as follows: "It is unlawful for any person to distil, manufacture, or in any manner make, or for any person to aid, assist, or abet any such person in distilling, manufacturing, or in any manner making any spirituous or malt liquors or intoxicating bitters within the State of North Carolina; but this shall not be understood as

prohibiting the manufacture of wines and cider in the manner and under the conditions which are now or may hereafter be provided by law. Any person or persons violating the provisions of this section shall, for the first conviction, be guilty of a misdemeanor, and, upon conviction or confession of guilt, punished in the discretion of the court," etc. C. S., 3409.

It is hardly necessary that we should discuss the principle of the common law as to aiders and abettors in misdemeanors, and we simply state the general rule that aiders and abettors in misdemeanors are to be considered as principals. This Court has often held that one who aids and abets in a misdemeanor can be convicted of the principal offense charged in the bill, and we said in *S. v. Horner,* 174 N. C., 792, which was an indictment for an offense similar to the one described in this case, that "It makes no difference whether defendant was a principal in the first degree or in the second degree as aider and abettor. The latter is but a lower grade of the principal offense, viz., the distilling and manufacturing of liquor. An aider and abetter is denominated in the books as principal in the second degree," and in *S. v. Ogleston,* 177 N. C., 542, *Allen, J.,* charged the jury: "Under this act, notwithstanding the charge is for the manufacture of spirituous liquors, you can convict either of the defendants for aiding and abetting the manufacturing of spirituous liquors as principals." This charge was sustained. See, also, *S. v. Killian,* 178 N. C., 753.

There are many cases in which we have upheld convictions upon similar indictments for aiding and abetting, when the evidence was of far less convincing force than the proof upon which this verdict rests, and where it showed no more participation in the principal crime than that of aiding and abetting.

The defendant, however, moved in arrest of judgment, because the indictment charged the manufacture of liquor without any count therein for aiding and abetting in the manufacture, yet the jury convicted him of aiding and abetting. The legal effect of this verdict, as we have shown, was to declare him guilty of manufacturing. *S. v. Killian, supra; S. v. Ogleston, supra; S. v. Clark,* 183 N. C., 733; *S. v. Smith,* 183 N. C., 729.

We find no error in the case that would warrant us in disturbing the verdict or the judgment.

No error.