STATE v. C. W. BAKER.

(Filed 22 October, 1930.)

1. **Bills and Notes I f—"Bad Check Law" is to be strictly construed as a criminal statute.**

   Our "bad check law" is a criminal statute and must be strictly construed, and in order for a drawer or maker of a check to be convicted thereunder it is necessary that he have knowledge at the time of drawing the check that he did not have sufficient funds and had not arranged with the drawee bank for its payment upon presentation.

2. **Same—Evidence in this case held insufficient to go to jury as to principal's criminal liability for check drawn by agent.**

   Where, in a prosecution under our bad check law, the evidence tends to show that the defendant was a fish dealer and had arranged with another to buy for him as his agent, and had furnished him a blank check book and authorized him to draw checks on his account signed in his name by the other as agent, and that the agent drew a check in payment of oysters as authorized and that the check was returned marked "insufficient

funds," and there is no evidence that at the time the check was drawn the principal had knowledge of the drawing of the check or the amount thereof: *Held*, the evidence is insufficient to show knowledge required for conviction under the statute, and judgment as of nonsuit should have been entered. C. S., 4643.

STACY, C. J., concurring; ADAMS, J., dissenting.

APPEAL by defendant from *Barnhill, J.,* and a jury, at June Term, 1930, of CARTERET. Reversed.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*
*Louis W. Gaylord for defendant.*

CLARKSON, J. The defendant was indicted under chapter 62, Public Laws 1927, generally known as the "Bad Check Law," as follows: "It shall be unlawful for any person, firm or corporation, to draw, make, utter or issue and deliver to another, any check or draft on any bank or depository, for the payment of money or its equivalent, knowing at the time of the making, drawing, uttering, issuing and delivering such check or draft as aforesaid, that the maker or drawer thereof has not sufficient funds on deposit in or credit with such bank or depository with which to pay the same upon presentation. Any person, firm or corporation violating any provision of this section shall be guilty of a misdemeanor. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depository for the payment of any such check or draft."

The defendant introduced no evidence, and at the close of the State's evidence made a motion to dismiss the action. C. S., 4643. This motion of defendant was overruled by the court below and in this we think there was error. The evidence on the part of the State was to the effect that the defendant, who lived at Greenville, N. C., employed one Leland Mason to buy fish and oysters for him, in Carteret County, N. C. He gave him a check book with blank checks in it, on the Greenville Banking and Trust Company, with authority to draw checks on defendant's account in said bank. Mason drew a check on said bank payable to Gaskill Bros., of Morehead City, N. C., for oysters purchased by him from them on 11 February, 1930. The check was for $72.60, and the oysters were delivered on defendant's truck. The check was signed "C. W. Baker, by Leland Mason." The check was deposited by Gaskill Bros., and returned unpaid for insufficient funds. Other checks signed this way by Mason were paid. Baker was not present when the check was given by Mason.

STATE v. BAKER.

Criminal statutes are construed strictly. The statute requires, as one of the ingredients of the crime, that when the check is delivered to another that the maker or drawer must have knowledge that he has insufficient funds on deposit in or credit with the bank on which the check is drawn, with which to pay same on presentation. *S. v. Crawford,* 198 N. C., 522. The check was not drawn by defendant, but by his agent, Mason, and Baker was not present; so, at the time the check was drawn and delivered to Gaskill Bros. by Mason, there is no evidence that defendant knew either the time or the amount of the check that was drawn. At the time the check was delivered, the record discloses no evidence that Baker had actual or implied knowledge that there was insufficient funds on deposit, or such actual or implied knowledge so that he could make arrangements to have credit with the bank to meet the check. One cannot be convicted of a crime on conjecture. Of course defendant is liable on the record in a civil action, and it goes without saying that he should pay his debt contracted by his agent for the oysters he received, but to convict him for a crime under the statute, either actual or implied knowledge is necessary when the check is delivered. The evidence is mere conjecture on this record and not sufficient to be submitted to a jury. The judgment is
Reversed.

STACY, C. J., concurs in result on the ground that the record discloses no evidence of scienter, such as the statute requires. *S. v. Yarboro,* 194 N. C., 498, 140 S. E., 216.

Of course a principal is liable, criminally as well as civilly, for the acts of his agent to which he is privy, assents to, encourages, or aids and abets, in such a way as to involve him morally in the guilt of the agent's misdoings. 8 R. C. L., 66; *S. v. Parris,* 181 N. C., 585, 107 S. E., 306; *S. v. Kittelle,* 110 N. C., 560, 15 S. E., 103. But the evidence in the instant case is lacking as to the defendant's knowledge of insufficient funds on deposit in or want of credit with the bank or depository with which to pay the check in question upon presentation— a vital and necessary ingredient of the offense. *S. v. Yarboro, supra.*

True, the record contains the following entry: "It was admitted that at the time the check was drawn, the defendant did not have sufficient funds in the bank to pay the same and had not made arrangements with the bank to pay the check upon presentation." But this admission falls short of establishing guilty knowledge on the part of the defendant at the time the check in question was issued and delivered to Gaskill Bros. Nor is it sufficient to warrant the jury in finding this crucial fact, and thus bridge the hiatus in the State's case. *S. v. Johnson, ante,* 429.

The evidence raises a suspicion, somewhat strong perhaps, of the defendant's guilt, but more is required in a criminal prosecution to carry the case to the jury. *S. v. Battle,* 198 N. C., 379, 151 S. E., 927; *S. v. Montague,* 195 N. C., 20, 141 S. E., 285.

ADAMS, J., dissenting: The defendant was convicted of giving a worthless check for $72.60 in violation of law. He authorized Leland Mason as his agent to buy fish and oysters; he gave Mason a check book and requested the bank to honor checks drawn by Mason as his agent; apparently there was no limit to the number or the amount of the checks to be drawn by Mason. The check in question was given by Mason to Gaskill Brothers "under that authority from Baker." The defendant cannot escape liability by showing that Mason was his agent. *S. v. Kittelle,* 110 N. C., 560.

Judge Barnhill's charge to the jury was clear and accurate. He instructed them that they could not convict the defendant unless they found that the check was delivered to Gaskill Brothers by the agent, Mason, for and on behalf of the defendant, and that at the time it was delivered the defendant did not have funds in the bank to meet it and had not made arrangements with the bank for its payment. He told them that the last two propositions were admitted by the defendant and that they "must further find beyond a reasonable doubt that at the time the check was drawn, issued, and delivered the defendant knew he did not have sufficient funds in the bank to pay the check upon presentation."

The judge in a previous part of the charge had said this: "Now, the defendant admits that when this particular check was delivered to the prosecuting witness by the man named Mason he did not have in the bank of Greenville sufficient funds to pay the check, and that he had not made arrangements with the bank for the payment of it upon presentation."

This admission, which is a part of the record, was repeated, then, in the charge to the jury.

So the only question is whether there is any evidence that the defendant knew his funds in the bank were insufficient to pay the check. The jury found that he had such knowledge; they would hardly have come to this conclusion in the absence of any evidence in its support. Direct and unequivocal testimony is not required; circumstances may be convincing. About the time the check was returned the defendant had other outstanding checks for the payment of which no provision had been made. A second worthless paper drawn in the same way was then in the hands of Gaskill Brothers. He failed to comply with his promise to Gaskill "to settle the matter up." These and other circumstances,

together with the fact that the defendant had apparently given Mason unlimited authority to draw checks as his agent is, in any view of the case, evidence from which the jury may be justified in their finding that the defendant knew he did not have sufficient funds in the bank. Can he evade liability by clothing his agent with unrestricted power to draw checks in his name and then be heard to say he did not know his funds had been exhausted? If his position is correct, the appointment of an agent may result in a convenient and effective method of abolishing the statute. I think Judge Barnhill made no error in submitting the case to the jury.